UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
OLIVIA KOSSEL, individually
and on behalf of all others similarly
situated,

                  Plaintiff,

      v.

THE CLOROX COMPANY,

                  Defendant.
-------------------------------------------------------x

Docket No.:

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff Olivia Kossel (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of The Clorox Company (hereinafter "Clorox" or "Defendant") with respect to manufacturing, marketing, and selling Defendant's Pine-Sol cleaning products (hereinafter the "Products")[1] throughout the country.

2. At all relevant times, the Products were contaminated with bacteriathat made the Products dangerous for consumers and their family members.

3. Defendant has improperly, deceptively, and misleadingly labeled and marketed its

---

[1] The Products include: Pine-Sol Multi-Surface Cleaner Lavender Clean, 28oz, Pine-Sol Multi Surface Cleaner Lavender Clean 48oz, Pine-Sol Multi Surface Cleaner Lavender Clean 60oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 28oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 48oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 60oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 175oz, Pine-Sol Multi-Force Cleaner Lemon Fresh 100oz, Pine-Sol Multi-Surface Cleaner Lemon Fresh 2x 100oz, Pine-Sol Multi-Surface Cleaner Sparkling Wave® 48oz, Clorox Professional Pine-Sol Lemon Fresh Cleaner 144oz, Clorox Pine-Sol Lavender Clean All Purposes Cleaner 144oz, CloroxPro Pine-Sol Lemon Fresh All Purpose Cleaner 144oz, CloroxPro Pine-Sol Orange Energy ® All Purposes Cleaner 144oz, CloroxPro Pine-Sol Sparkling Wave All Purpose Cleaner 144oz.

Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products were contaminated with bacteria and that using the Products may increase the risk of contracting invasive infections and other injuries.

4. As described in further detail below, the Products contain *Pseudomonas aeruginosa*, which could lead to serious and life-threatening adverse health consequences.[2] The risk of serious infection is also particularly concerning for immunocompromised individuals who are highly susceptible to life threatening diseases and even death from *Pseudomonas aeruginosa*.[3]

5. Defendant failed to disclose that the Products contained, or are at the risk of containing, *Pseudomonas aeruginosa*.

6. Defendant has issued a recall for the Products.[4]

7. Plaintiff and other consumers rely on manufacturers like Defendant to sell products that are safe and free from harmful known substances, including *Pseudomonas aeruginosa*, and to promptly and clearly warn about the dangers of the Products.

8. Plaintiff and those similarly situated (hereinafter "Class Members") expected that the Products will not contain, or risk containing, any knowingly harmful substances that are not disclosed.

9. Defendant's advertising and marketing campaign is false, deceptive, and misleading because Defendant failed to disclose that the Products contain *Pseudomonas aeruginosa*, which is dangerous to one's health, well-being, and even life. Nevertheless, Defendant does not list or mention *Pseudomonas aeruginosa* anywhere on the Products' packaging or labeling.

---

[2] *Pseudomonas aeruginosa* is a gram-negative bacterium that causes infections in the blood and lungs and is associated with inhalation and skin ingestion, *see*: https://www.cdc.gov/hai/organisms/pseudomonas.html; *see also* Minh Tam Tran Thi, et al., *Pseudomonas aeruginosa Biofilms*, Int. J. Mol. Sci., 2020 Nov; 21 (22): 8671, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7698413/.
[3] Id.
[4] See https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface-Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposure-to-Bacteria-1; *see also* https://pinesolrecall.com/.

10. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions about the safety of the Products and what is in the Products when they purchased them.

11. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a cleaning product contaminated with known bacteria that is harmful to consumers.

12. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's health-conscious marketing and advertising campaign, including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

13. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350. Defendant also breached and continues to breach its warranties regarding the Products.

14. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

15. Defendant manufactures, markets, advertises, and sells cleaning products. Specifically, the Products are intended to clean the toughest dirt and grime and deodorize with one powerful solution.[5]

16. Defendant recommends using the Products on hard, nonporous surfaces, including

---

[5] https://www.cloroxpro.com/products/pine-sol/scented
cleaners/#:~:text=Clean%20the%20toughest%20dirt%20and,%2C%20toilets%2C%20dumpsters%20and%20more

floors, sinks, counters, stoves, bathtubs, shower stalls, and tiles.[6]

17. Since the COVID pandemic, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria-conscious

18. Defendant has capitalized on consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

19. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Pseudomonas aeruginosa*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report the contents and risks of the Products.

20. The Products' packaging and labeling does not identify *Pseudomonas aeruginosa*. Indeed, *Pseudomonas aeruginosa* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Pseudomonas aeruginosa* in the Products. This leads reasonable consumers to believe the Products do not contain and are not at risk of containing dangerous ingredients like *Pseudomonas aeruginosa*.

21. The bacteria in the Products can survive on inanimate surfaces for months[7] and can be transmitted through airborne exposure and contact with the skin.[8] Consequently, the bacteria in the Products can infect people if the person is close to the applied surface or if the person touches the applied surface.

22. Moreover, inhaling or being exposed to the bacteria in the Products can cause illness and death.[9]

---

[6] https://www.pinesol.com/products/lemon-fresh-cleaner/.
[7] Axel Kramer, *How long do nosocomial pathogens persist on inanimate surfaces? A systematic review*, BMC Infect Dis., 2006; 6:130, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1564025/
[8] S. Sudharsanam, *Airbone Pseudomonas species in Healthcare Facilities in a Tropical Setting*, Curr Health Sci J., 2015 Apr-Jun; 41(2): 95-103, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6201198/; *see also* https://www.endosan.com/pseudomonas-aeruginosa-causes-symptoms-transmission-and-infection-prevention
[9] Yohei Migiyami, et al., *Pseudomonas aeruginosa Bacteremia among Immunocompetent and Immunocompromised Patients: Relation to Initial Antibiotic Therapy and Survival*, Jpn J Infect. Dis., 2016; 69(2):91-6, accessible at: https://pubmed.ncbi.nlm.nih.gov/26073727/.

23. Defendant, The Clorox Company, is one of the oldest and leading manufacturers and sellers of cleaning products in the United States and manufactures and sells some of the most popular house cleaning products. In 2020, for example, Defendant Clorox reported sales of $2.7 billion for its household, personal care and industrial and institutional cleaning products.[10]

24. This is why *Pseudomonas aeruginosa* in Defendant's Products is particularly concerning, as also evidenced by Defendant recalling the Products.[11]

25. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing cleaning products for many years, including producing and manufacturing the Products.

26. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in manufacturing its Products and possesses unique and superior knowledge regarding the manufacturing process for the Products, the manufacturing process of the ingredients and raw materials in the Products, and the risks associated with those processes, such as the risk of *Pseudomonas aeruginosa* contamination.

27. Accordingly, Defendant possesses superior knowledge regarding the risks involved in producing and manufacturing its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

28. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

29. Defendant's false, misleading, and deceptive omissions regarding the Products containing *Pseudomonas aeruginosa* are likely to continue to deceive and mislead reasonable

---

[10] https://www.happi.com/heaps/view/7374/3/341492/.

[11] *See* https://www.cpsc.gov/Recalls/2023/Clorox-Recalls-Pine-Sol-Scented-Multi-Surface-Cleaners-CloroxPro-Pine-Sol-All-Purpose-Cleaners-and-Clorox-ProfessionalTM-Pine-Sol-Lemon-Fresh-Cleaners-Due-to-Risk-of-Exposure-to-Bacteria-1; *see also* https://pinesolrecall.com/

consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

30. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what the Products contain that people inhale and touch. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign for the Products, the Products' labels, and the listed ingredients. Defendant knows that if it had disclosed that the Products contained *Pseudomonas aeruginosa*, Plaintiff and the Class would not have purchased the Products.

31. Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

32. Consumers rely on marketing and information in making purchasing decisions.

33. By omitting to disclose that the Products include *Pseudomonas aeruginosa* throughout the Class Period, Defendant knew that those omissions were material to consumers since the consumers would not purchase cleaning materials with a harmful bacteria.

34. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

35. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

36. Defendant's false, misleading, and deceptive misrepresentations and omissions

6

are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

37. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed as having the ability to clean without the bacterium *Pseudomonas aeruginosa* over comparable products not so marketed.

38. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that Plaintiff and the Class Members:

    a. Paid a sum of money for Products that were not what Defendant represented;

    b. Paid a premium price for Products that were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

39. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

40. Plaintiff and the Class Members paid for Products that do not contain *Pseudomonas aeruginosa*. Since the Products do indeed contain *Pseudomonas aeruginosa*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

41. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff

and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

42. Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Products, as well as the information on the Products' labels, and purchased Defendant's Products based thereon. Had Plaintiff and Class Members known the truth about the Products, i.e., that they contained a harmful bacterium (i.e. *Pseudomonas aeruginosa*), Plaintiff and the Class would not have been willing to purchase the Products at any price, or, at minimum would have paid less for the Products.

## JURISDICTION AND VENUE

43. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Texas, and Defendant The Clorox Company is a citizen of New York and California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

44. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York. Defendant is registered as a public company whose stock trades on the New York Stock Exchange, located within this District.

45. Venue is proper because Defendant and many Class Members reside in the Southern District of New York, and throughout the State of New York, and a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

## PARTIES

**Plaintiff**

46. Plaintiff Olivia Kossel is a citizen and resident of Texas. During the applicable statute of limitations period, Plaintiff purchased Defendant's Pine Sol Product that was subject to the recall.

47. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have purchased the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff purchased were worthless because they contained the known harmful substance, *Pseudomonas aeruginosa*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

48. Defendant, The Clorox Company, is a Delaware corporation with its principal place of business in Oakland, California and offices in New York, in this District. The Clorox Company is a publicly traded company and its stock trades on the New York Stock Exchange, which is located in this District. The Clorox Company is one of the largest manufacturers of cleaning products in the United States and produces some of the most popular cleaning products, including the Products, at stores throughout the country, including in this District.

49. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

**CLASS ALLEGATIONS**

50. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, the claims in this Complaint are uniquely situated for class-wide resolution.

51. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

52. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

53. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

54. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

   b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

   c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

   d. Whether Defendant's false and misleading statements and omissions concerning its

> Products were likely to deceive the public; and
>
> e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

55. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

56. <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

57. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

58. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

> a. Joining thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;
>
> b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly

burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in managing this action that would preclude maintaining it as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecuting this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase the Products.

59. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
(On Behalf of Plaintiff and the Class)

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

62. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

63. There is no adequate remedy at law.

64. Defendant misleadingly, inaccurately, and deceptively advertises and markets the Products to consumers.

65. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Pseudomonas aeruginosa*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have purchased or used the Products. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

66. Plaintiff and the Class Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

67. Defendant's advertising and the Products' packaging and labeling induced Plaintiff and the Class Members to buy Defendant's Products.

68. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

69. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the Class)

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

72. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

73. Defendant's labeling and advertisements contained untrue and materially

misleading statements and omissions concerning its Products inasmuch as Defendant misrepresented that the Products are safe for use, failed to disclose that the Products contained *Pseudomonas aeruginosa,* and failed to properly warn consumers about the risks of using the defective Products.

74. Plaintiff and the Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

75. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the Class Members to buy Defendant's Products.

76. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

78. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

79. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

80. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY: FAILURE TO
## PROVIDE ADEQUATE WARNING

81. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

82. The Products manufactured and supplied by Defendant were defective due to inadequate warnings or instructions because Defendant knew or should have known that the Products created significant risks of serious bodily harm to consumers but Defendant failed to adequately warn consumers of such risks.

83. Defendant knew or, in the exercise of reasonable care, should have known that the Products contained *Pseudomonas aeruginosa* but were marketed to be used to clean surfaces. Defendant failed to adequately warn about the risk to Plaintiff and consumers, including the risk of illness, infection, and severe adverse reactions.

84. Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of the Products containing *Pseudomonas aeruginosa* in light of the likelihood that the product would cause the harm claimed by Plaintiff and in light of the likely seriousness of that harm.

85. Defendant, as the manufacturer of the Products, is held to the level of knowledge of an expert in the field of that type of cleaning product and had a duty to warn consumers of the dangers associated with its Products but failed to do so.

86. Defendant failed to reasonably or adequately warn users of the risks of its Products containing *Pseudomonas aeruginosa* for the following reasons, among others:

  a. Defendant minimized and downplayed those risks associated with its products containing *Pseudomonas aeruginosa* that it chose to disclose;

  b. Defendant received reports of problems with the Products but Defendant failed to warn Plaintiff and the Class about the reports and about the possibility of being injured by using the Products; and

  c. The Products fail to display and advise of the Products' risks, proper use, or need to test the Products in an effective and reasonable manner.

87. The Products manufactured and supplied by Defendant were defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of contamination, illness, and serious bodily harm, as set forth herein, from the use of the Products, Defendant failed to provide an adequate warning to consumers of the Products, knowing the Products could cause serious injury as set forth herein.

88. Plaintiff read and followed the deficient directions that were provided with Defendant's Products. Defendant's inadequate directions and packaging were a substantial factor in causing Plaintiff's damages and injuries. As a direct and proximate result of Plaintiff's use of the Products designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff suffered harm and damages and will continue to suffer such harm and damages in the future.

89. As a result of Defendant's failure to adequately warn Plaintiff, Plaintiff is entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## **FOURTH CAUSE OF ACTION**
## **NEGLIGENCE**

90. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

91. Defendant had a duty to exercise reasonable case in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the Products, including a duty to ensure that

the Products did not pose a significantly increased risk of injury to Plaintiff and other consumers.

92. Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing, and distributing the Products into the stream of commerce. Defendant knew or should have known that the Products are marketed to be used on a regular basis to clean, that they were not safe for use by Plaintiff or other consumers, and that they present a risk of severe injuries, therefore giving rise to pain and suffering, debilitation, and the need for medical treatment.

93. Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the Products.

94. Although Defendant knew or should have known that its Products containing *Pseudomonas* could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant continued to market and sell its Products.

95. Although Defendant knew or should have known that its Products could cause severe reactions and injuries in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant failed to use ordinary care in warning Plaintiff and other consumers about these risks.

96. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered significant damages and will continue to suffer such damages in the future.

97. Defendant's actions and omissions were malicious, wanton, oppressive, and/or reckless.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas aeruginosa*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: December 9, 2022

SQUITIERI & FEARON, LLP

By: _____
Stephen J. Fearon, Jr.
305 Broadway
7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com

Attorneys for Plaintiff

19